

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

December 10, 2025

**BY ECF**

The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, New York 10007

  Re:  *United States v. Do Kwon,* S1 23 Cr. 151

Dear Judge Engelmayer:

  The Government respectfully submits this letter in advance of the sentencing of Do Kwon ("Kwon" or the "defendant"), scheduled for Thursday, December 11, 2025 at 11 a.m., and in response to the questions posed by the Court in its December 8, 2025 Order (the "Order"). ECF No. 58.

Prosecution in South Korea

  The Court posed the following questions related to the ongoing prosecution of Kwon in South Korea: (1) whether the parties "have any non-speculative insight as to the eventual disposition of the charges pending against Mr. Kwon in South Korea," (2) whether any agreement has been entered between Kwon and South Korean authorities, (3) what are the possible "maximum and minimum sentences that could be imposed in South Korea" assuming Kwon is convicted, and (4) whether a sentence imposed in South Korea would be concurrent or consecutive to that imposed by this Court. Order at 1.

  The Government has no non-speculative insight into the ultimate disposition of the charges in South Korea. Based on the Government's conferrals with representatives of the Korean Ministry of Justice, the Government has learned the following information in response to the Court's questions:

  Under Korean judicial procedure, prosecutors cannot disclose the punishment they intend to seek before the close of trial, and that recommendation is largely informed by the evidence obtained and presented at trial. The Government learned that Kwon's citation to a possible 40-year sentence in a media report is merely a projection of a potential maximum term in South Korea, and not a reflection of any actual sentence sought by South Korean prosecutors, which is impossible to estimate at this stage. Indeed, sentences of thirty years or more are rare. Moreover,

Korean courts often impose significantly lower sentences than those sought by prosecutors. No agreement has been reached between Kwon and the prosecutors in South Korea disposing of his charges. To the contrary, Kwon's submission to this Court reaffirms his apparent intention to contest the Korean charges. According to the Korean Court's Sentencing Guidelines, Kwon faces an advisory range of 6 years' imprisonment to life imprisonment, but this range is not binding on the sentencing judge. One of the fraud charges against Kwon has a mandatory minimum sentence of five years' imprisonment, however, the sentencing judge has discretion to halve that statutory mandatory minimum to 2.5 years' imprisonment. Further, a defendant may be paroled after serving one-third of the imposed sentence. The maximum sentence that could be imposed in Korea is imprisonment for an indefinite term; however, there is no Korean court precedent where a defendant was sentenced to indefinite imprisonment for fraud or other property-related crime. When imposing a sentence, South Korean courts must take into account the term of imprisonment Kwon served in the United States. Accordingly, if Kwon is convicted in South Korea, the Government understands that any sentence will be reduced by the term of imprisonment he serves in connection with this matter.

## Time Served

The Court posed several questions related to the time Kwon has served in custody to date, including: (1) whether the parties agree that the Bureau of Prisons ("BOP") will not award Kwon any credit for the time Kwon served in Montenegro, (2) whether the Court should treat the time Kwon served in Montenegro awaiting extradition "as attributable to this prosecution," (3) whether the Government's commitment not to seek a sentence of more than 12 years' imprisonment "presuppose[d] that none of Mr. Kwon's time in custody in Montenegro would count toward the sentence imposed here[.]" Order at 1-2.

BOP counsel has informed the Government that Kwon will be given credit for the time served in Montenegro awaiting extradition, in excess of the four-month period he served for his separate passport fraud crime in Montenegro. The Court should thus treat the 17 months and 8 days' imprisonment in Montenegro awaiting extradition as attributable to this prosecution. PSR ¶ 8. The parties entered into no specific agreement regarding anticipated credit for the time Kwon spent awaiting extradition in Montenegro. Given that Kwon will receive credit for that time, and given that the Government's recommendation is unchanged, no further leniency is warranted. As discussed below, however, the U.S. Attorney's Office for the Southern District of New York's ("SDNY's") support of the defendant's application to transfer to South Korea under the international prisoner transfer program is conditioned on the defendant serving 50% of the sentence imposed by this Court *exclusive* of any sentencing credits granted by the BOP. Consequently, although the defendant's overall sentence may be reduced by the time spent in custody in Montenegro, SDNY does not commit to supporting a transfer application until the defendant has served 50% of the term of imprisonment imposed by this Court. Ultimately, however, the determination whether to transfer Kwon under the international prisoner transfer program rests in the sole discretion of the International Prisoner Transfer Unit ("IPTU"), Office of International Affairs ("OIA") of the Criminal Division of the United States Department of Justice.

### Department of Justice Remission Process

With respect to the remission process, the Court asked (1) by what means the Department of Justice determines who is to be compensated in the case of competing claims, and (2) whether this Court needs to initiate or inform the remission process. Order at 2.

In the event of competing claims, remission is "generally grant[ed] . . . on a pro rata basis to recognized victims when petitions cannot be granted in full due to the limited value of the forfeited property." 28 C.F.R. § 9.8(f). It is the Justice Department's goal to compensate victims through the remission process where funds are available, and in the most efficient manner. As a practical matter, no remission may occur unless and until the Government has seized and forfeited assets that may be distributed to victims.

This Court need not take any steps to "initiate or inform" the remission process, Order at 2, because authority to direct remission of forfeited funds rests entirely with the Attorney General. The Attorney General, through its designee, is authorized to "grant petitions for remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice." 21 U.S.C. 853(i).

### First Step Act Credits and Supervised Release

This Court posed several questions related to the First Step Act ("FSA") credits and supervised release, specifically, (1) whether "the parties agree that Mr. Kwon will be ineligible for Earned Time Credits under the First Step Act," (2) "how much of a difference in Mr. Kwon's prison time would arise from such ineligibility," and (3) whether there is any purpose in "imposing a post-imprisonment term of supervised release" given that Kwon is likely to be promptly removed, or otherwise transferred, from the United States before beginning any term of supervision. Order at 2.

The maximum FSA time credits that could apply to reduce an inmate's sentence is 365 days. As Kwon stated in his submission, the defendant is consenting to a judicial removal order. Sent. Subm. at 10. To that end, the Government anticipates presenting the Court at sentencing with the attached application and proposed order seeking entry of a judicial order of removal. *See* Exhibit A. Should the Court enter the proposed removal order, it will render Kwon ineligible to apply any FSA time credits against his sentence; thus, he would not receive the potential reduction of 365 days' imprisonment that another inmate not subject to transfer or removal could obtain. Finally, as the defendant is likely to be transferred or removed, the Government believes there is no purpose to imposing a post-imprisonment term of supervised release.

### U.S. Attorney's Office's Support for a Prisoner Transfer Application

The Court posed several questions related to the U.S. Attorney's Office's support for a prisoner transfer application pursuant to the international prisoner transfer program, including: (1) whether SDNY's promise to support a prisoner transfer application has any implications for the judgment in this case, and (2) whether there are any assurances that Kwon " would not be released before the completion of the prison term imposed by this Court[.]" Order at 2-3.

By treaty, Kwon has a right to apply to the international prisoner transfer program at any time after he is sentenced. Pursuant to the parties' plea agreement, SDNY will support the transfer application only once the defendant has served 50% of the term of imprisonment imposed by this Court, exclusive of any sentencing credits calculated by the BOP. As stated above, the ultimate transfer decision rests in the sole discretion of the IPTU, OIA of the Criminal Division of the United States Department of Justice. This Court need not incorporate any recommendation or directive in its judgment in connection with this program or the parties' agreement.

The U.S. Government does not customarily seek, and has not received, any assurances that a prisoner transferred to Korean custody would remain incarcerated until the completion of a prison term imposed by a U.S. court. With respect to any pending Korean charges, the Government understands that trial detention in South Korea is limited to a period of six months, and that if trial remains pending after such a period, the defendant may be released on bail.

### Victims

The Court asked by what means the Government has notified the victims of Kwon's crimes and whether any victims expressed an interest in being heard at sentencing. Order at 3.

Pursuant to the Court's January 8, 2025 Order, ECF No. 16, the Government published notice of the sentencing on the website associated with this matter, including directions for submitting a victim impact statement and/or indicating whether a victim would like to be heard at sentencing. The Government relayed the same information to counsel for certain victims with whom the Government had engaged during its investigation. Prior to the issuance of the Order, the Government also contacted counsel for the Plan Administrator in connection with the Terraform bankruptcy, *In re Terraform Labs Pte. Ltd.*, Case No. 24-10070 (Bankr. D. Del.) and requested that the Plan Administrator notify the pool of cryptocurrency loss claimants of the upcoming sentencing and the victims' rights to be heard. According to the Plan Administrator, on Monday December 8, 2025, the Plan Administrator emailed claimants and filed an entry on the bankruptcy docket noticing the sentencing and providing contact information for a victim-witness representative at SDNY who could facilitate a victim's request to submit a statement in connection with sentencing or otherwise be heard at sentencing.

To date, over 200 victims have submitted victim impact statements, which have been marked Exhibits B through J. The Government has submitted these exhibits to the Court and

defense counsel under seal; redacted versions of these submissions will be filed on the public docket expeditiously. Six victims have requested to speak during sentencing[1] via telephonic conference. Consequently, the Government respectfully requests that this Court authorize the remote participation of the victims who wish to be heard and, assuming this request is granted, provide call-in details to permit those victims to connect remotely.

                                              Respectfully submitted,

                                              JAY CLAYTON
                                              United States Attorney

                                                /s/
                                              Marguerite B. Colson
                                              Sarah Mortazavi
                                              Kimberly Ravener
                                              Assistant United States Attorneys
                                              (212) 637-2587/2520/2358

---

[1] One of the victims has requested a Russian-language interpreter; the Government has retained an interpreter who will be present at sentencing.